In re H,OLLAND BANKING COMPANY: THE STATE, Appellant, v. HEER STORES COMPANY, REPS DRY GOODS COMPANY, JOHN F. MEYER & SONS MILLING COMPANY, HOBART-LEE TIE COMPANY, LEVY-WOLF DRY GOODS COMPANY and McDANIEL NATIONAL BANK.

In Banc, March 15, 1926.

1. **BANK DEPOSITS: Priority of Claims: Special Security: Release.** Where the deposit of the State's money, made in a bank which subsequently failed, was secured by deeds of trust and personal bonds, and the State sets up a claim to priority to payment over other depositors, and no point is made that the State did not first exhaust the collateral security in its hands, it necessarily results that if the State is entitled to priority in the general and unpledged assets of the bank over other general depositors and general creditors, the collateral security not disposed of by the State and not applied on the State's deposit will become a part of the assets of the bank and available to other creditors after the State's deposit has been paid.

2. **BANK DEPOSITORY: Priority of State over Other Depositors.** When a bank which had previously been selected as a state depository has become insolvent and passed into the hands of the Commissioner of Finance, the State is not entitled to have its moneys deposited therein paid in preference to the valid claims of other general creditors, or to exclude them from sharing in the bank's assets until its deposit is paid.

3. **INSOLVENT: State as Prior Creditor: Depository Act: Complete Scheme.** Section 7212, Revised Statutes 1919, clearly declares a priority in favor of debts due the State upon all properties of insolvent persons, including banks, except that such priority does not extend to debts due the United States or debts due servants for wages or expenses incurred in the last sickness and burial of deceased persons. But as to the deposits of its money made by the State in a selected state depository that statute has been supplanted by the Depository Act (Sec. 13379, R. S. 1919, and other

sections of Article II, of Chapter 123), which prescribes a complete and separate scheme in itself for protection against loss of state moneys deposited in a selected depository.

4. **BANK DEPOSITORY: Priority of State over General Creditors: Common-Law Right of Sovereign: Waiver.** As to its moneys deposited by the State in a selected state depository, the statutes have supplanted the common-law rule that the State as a sovereign is entitled to preference over general creditors of the depository. The statutes show on their face, and by their evolution, that the State, by exacting special security, of definite value and kind, has waived its common-law right to priority over general depositors in the bank, even though such special security, upon the bank's failure, prove inadequate to pay its deposit.

5. ———: ———: ———: **Waiver.** Notwithstanding the existence upon its statute books of the priority law applicable to every conceivable debt due the State (Sec. 7212, R. S. 1919), the State may waive, and has waived, the benefits of such priority law by enacting other laws (Art. 2, Chap. 123, and especially' Sec. 13379, R. S. 1919) which evidence such intent, and require special designated security for deposits made by it in a selected depository bank. The Depository Act shows that the State has waived, not only its common-law right as the sovereign to priority over other depositors of moneys deposited by it in an insolvent selected depository, but also its statutory right to priority of payment before such other depositors are permitted to share in the depository's assets.

6. ———: **Value and Character of Security: Discretion.** The statute (Sec. 13379, R. S. 1919) does not leave either the value or character of the security of the State's deposit in a selected state depository to the discretion of the State Treasurer and other state officers. It fixes a minimum of security to be exacted: the bonds and notes taken as such security must be of a value at least equal to the deposit, with the additional requirement of personal bond of twenty-five per cent of the bid accepted, where certain designated bonds are put up, and personal bond of seventy-five per cent of such accepted bid when notes secured by real estate are put up as security.

7. ———: ———: **Depository Law: Exhaustion of Special Security.** The Depository Act is a complete and separate scheme for protection against loss of state moneys deposited in a selected depository, and requires the depository to give full and adequate security equal to or in excess of such deposits as may lawfully be deposited therein, but gives the State no preference over and above other general depositors in the distribution of the assets of such depository when it becomes insolvent. The State must first look to the special security taken by it to secure its deposits, and can only

come in on a parity with general creditors for a distributive share of the unpledged assets of the insolvent depository after it has exhausted its special security and applied the proceeds thereof on the debt due it.

8. ———: ———: ———: **Later Statute than Section 7212.** The Depository Act is a later statute than Section 7212, Revised Statutes 1919. Notwithstanding Section 7212, giving priority to debts due the State was enacted in 1881, after the enactment in 1879 of the first depository law, the Act of 1889 was not amendatory of the Act of 1879, but a new, complete and independent act, and contained a section which covered the subject of the security required for safe-keeping the state deposits and which, with certain subsequent amendments, is now Section 13379, which supplants the priority in favor of debts due the State given by Section 7212.

9. ———: ———: **National Banks: Discrimination.** National banks may become selected depositories of the State's money under the Depository Act, but if one of them should become insolvent the State could not claim priority in the distribution of its assets; and if the State cannot claim priority for its moneys deposited in such selected national bank upon its becoming insolvent, the policy of the State which prevents discrimination against state banks in favor of national banks prevents the State from claiming priority of payment of its moneys on deposit in a selected state bank at the time it became insolvent and went into the hands of the Commissioner of Finance.

---

Banks and Banking, 7 C. J., Section 543, p. 749, n. 56, 56 New; Section 753, p. 817, n. 16 New. States, 36 Cyc., p. 871, n. 80, 81, 83. Statutes, 36 Cyc., p. 1151, n. 58.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby,* · Judge.

AFFIRMED.

*Robert W. Otto,* Attorney-General, and *George W. Crowder,* Assistant Attorney-General, for appellant.

(1) All public moneys of the State are required to be deposited to the credit of the State in depositories to be selected by a board composed of the Governor, the Attorney-General and the State Treasurer. In all things

appertaining to the selection of depositories, and the placing therein of the State's funds for safe-keeping, there is no individual or personal function or responsibility. It is the work of a legal public agency, charged with the performance of a public duty. Constitution, art. 10, sec. 15; Secs. 13375, 13385, 13386, R. S. 1919. The Holland Banking Company did not obtain the deposits, upon which the State's claim is based, by any ordinary or private contract, but through proceedings instituted under command of public law; and the State seeks restitution or recovery on the principle that it is a preferred creditor as to its public funds deposited in selected depositories. The right of priority is based, (a) on the common-law right of the State, as a sovereign, to protect its funds, dedicated to the maintenance of government, against loss; and (b) on its statutory right of preference as given by Sec. 7212, R. S. 1919. (2) To the end that government may function, and that no hazard be permitted as to the possible loss of public moneys, a state, by its sovereign prerogative right, is a preferred creditor as to the collection of all obligations due it. This rule has for its foundation the considerations of public policy, so that public funds, derived from the taxation of the people, and dedicated to the support of government, may not in any event be lost, but may always be available to meet the purposes for which they were levied, to-wit, the expenses of government. The State therefore, under its common-law prerogative (without the aid of a statute), has the right of priority with respect to the collection of its public funds in a depository which has become insolvent. Marshall v. New York, 254 U. S. 380, 65 L. Ed. 315; Guaranty Co. v. Guaranty Title Co., 224 U. S. 152, 56 L. Ed. 706; Dollar Savings Bank v. United States, 19 Wall. 227, 22 L. Ed. 80; United States v. Heron, 20 Wall. 251; Booth v. State, 131 Ga. 750; Bibbins v. Clark, 29 L. R. A. (Iowa) 278; State v. Bank, 26 Am. Dec. 561; State v. Williams, 101 Md. 529, 4 Ann. Cas. 970; American Surety Co. v. Pearson, 178 (Minn.) N. W. 817; Fidelity Co. v. McClintock, 218 Pac.

(Mont.) 652; Aetna Acc. Co. v. Miller, 54 Mont. 377, L. R. A. 1918C, 954; In re Carnegie Trust Co., 46 L. R. A. (N. S.) 260; U. S. Fidelity Co. v. Trust Co., 213 N. Y. 629; Hoke v. Henderson, 14 N. C. 12; U. S. Fidelity Co. v. Bramwell, 32 A. L. R. 829; Booth v. Miller, 237 Pa. 297; Maryland Cas. Co. v. McConnell, 257 S. W. 410; U. S. Fidelity Co. v. Rainey, 113 S. W. 397; Woodyard v. Sayre, 24 A. L. R. 1497. (a) Prior to the enactment of what is now Section 7212, this State, in a suit involving the collection of taxes, accepted the rule of the common law, that state moneys should be preferred over claims of other claimants, so far as taxes were concerned, the only question then before the court. The question was passed upon in 1872, three years before the adoption of the present Constitution and nine years before the enactment of our preference statute, in the case of State to use of Phillips v. Rowse, 49 Mo. 586. (b) Another case touching the paramount right of the State as to the collection of its obligations due, which was also a suit involving public taxes, is Greeley v. Provident Savings Bank, 98 Mo. 458. (c) There is no basis for differentiation between money already derived from public taxation, and the collection of the taxes in the first instance. The purpose to which these moneys are dedicated is the reason for the rule, and this purpose remains the same, after the initial collection as before. (d) The same doctrine has received recognition in the following jurisdictions in cases where the question of priority by the prerogative right was discussed by the courts, but held not necessary to be passed upon in the given cases. Bank Comm. v. Chelsea Savings Bank, 125 N. W. (Mich.) 424, 127 N. W. 351; State v. Bank (N. M.), L. R. A. 1918A, 394; National Surety Co. v. Pixton, 24 A. L. R. 1487; Aetna Casualty Co. v. Moore, 181 Pac. (Wash.) 40; State v. Foster (Wyo.), 29 L. R. A. 226. (e) Painstaking research has failed to disclose but three states in the Union that have rejected the doctrine of a state's priority in the collection of its obligations, under the prerogative right. These states are:

Mississippi, Shields v. Thomas, 42 Am. St. 458; Potter v. Fidelity Co., 58 So. 713; New Jersey, Middlesex County v. State Bank, 30 N. J. Eq. 311; South Carolina, State v. Cleary, 20 S. C. (Law) 600. (3) The State's depository laws were first enacted in 1879 (Laws 1879, p. 237), and in 1881, the Legislature enacted a law, declaratory of the common law, with certain specified exceptions, making the State a preferred creditor in all cases where its debtor was insolvent. This act is what is now known as Sec. 7212, R. S. 1919. Laws 1881, p. 35. (a) This preference statute says that "whenever any person, indebted to the State of Missouri, is insolvent, . . . the debts due the State shall be first satisfied." The word "person" as used in said section is to be construed as inclusive of corporations. Secs. 7055, 7056, R. S. 1919; Shockley v. Fisher, 75 Mo. 501; Bank v. Harrison, 57 Mo. 513. (b) This preference statute, save as to the proviso added on, is a virtual rescript of the Federal preference statute, enacted in 1797. It may, therefore, be said that in the adoption of the Federal statute this State also adopted the judicial construction theretofore placed upon it by the Federal courts of last resort. State ex rel. v. Sullivan, 283 Mo. 547; State v. Carothers, 204 Mo. App. 209. (c) When the Legislature specified its own exceptions to the operation of Section 7212, that must be held to exclude the judicial injection of any other exceptions, under the rule of *expressio unius est exclusio alterius.* In other words, the Legislature has seen fit to write into the statute such express exceptions as it intended to apply thereto, and all debts due the State, except as so expressly excepted in the proviso added to Section 7212, come within the State's right of priority. State ex rel. v. Sweany, 270 Mo. 685; 36 Cyc. 1122, par. "i." (d) The leading case in the Federal jurisdiction construing the broad terms of the Federal statute, Section 3466, Revised Statutes of the United States, is that of Lewis v. United States, 92 U. S. 618, and the language of the Supreme Court of the United States declaring the scope of said statute is that

"where the language of a statute is transparent and its meaning clear there is no room for the office of construction. There should be no construction where there is nothing to construe." (4) The trial court in this case based its decision, in the absence of any direct ruling in Missouri on the question of the State's priority, upon the case of Cook County National Bank v. United States, 107 U. S. 455, but we fail to see the analogy. The Cook County National Bank case had under consideration the National Banking Act which was passed many years after the enactment of the Federal Priority Act. It was held by the court that the National Banking Act contained provisions repugnant to the Federal Priority Act of 1797, so that both could not stand and operate together. Because of this irreconcilability, the National Banking Act, being the later expression of the law makers on the subject, was held to supersede the Federal Priority Act to the extent of the repugnancy. It was held that since the National Banking Act provides for the distribution of the entire assets of the bank, giving no preference to any claim except as therein specifically stated, it was the intention of Congress to withdraw national banks from the operation of the Federal Priority Act. We have no such repugnancy between the priority act of Missouri (Sec. 7212, R. S. 1919) and the state depository laws, and we respectfully submit that the State's claim in this case comes squarely within the provisions of said Section 7212.

*Farrington, Curtis & Skinker* for respondents.

(1) Missouri cases touching Section 7212 are: Greeley v. Bank, 98 Mo. 458, tax question; Use v. Rouse, 49 Mo. 586, tax question; State v. Rubey, 77 Mo. 610, and State ex rel. v. Wilson, 77 Mo. 633, county money; State ex rel. v. Trust Co., 209 Mo. 472, giving origin. (2) Cases denying priority, where general insolvency law and depository laws for state money are the same as or very similar to the laws of Missouri: Cook County Natl. Bank

v. United States, 27 L. Ed. 537; Davis v. Bank, 40 L. Ed. 700; Leach v. Bank, 203 N. W. 31; Surety Co. v. Pixton, 24 A. L. R. 1487; State v. Loudermilk, 205 Pac. 915; Potter v. Fidelity Co., 101 Miss. 823; Aetna Ins. Co. v. Bank, 181 Pac. 40; State v. Bank, 167 Pac. 3; State v. Foster, 29 L. R. A. 226. (3) Cases in which states were denied priority: Smith v. Arnold, 176 S. W. 983; State v. Williams, 1 L. R. A. (N. S.) 254; Shields v. Thomas, 42 Am. St. 485; Middlesex Co. v. Bank, 3 N. J. Eq. 311; State v. Cleary, 20 S. C. 600. (4) Cases in which priority was allowed but not where depository laws were the same as in Missouri and not where bonds and notes and assets of the bank were taken as security in addition to a personal or surety bond: Booth v. State, 131 Ga. 750; Fidelity Co. v. Bramwell, 32 A. L. R. 829; Casualty Co. v. McConnell, 257 S. W. 410; Fidelity Co. v. Rainey, 113 S. W. 397; Aetna Ins. Co. v. Miller, 54 Mont. 377; Fidelity Co. v. McClintock, 218 Pac. 652; Surety Co. v. Pearson, 178 N. W. 817; Company v. Bank, 125 N. W. 424. (5) Where the State contracts with the subject, it drops its cloak of sovereignty. 25 R. C. L. 392. (6) Sec. 13345 was re-enacted as a new law in 1889, and refers by number to the chapter on depositories. Why enact this statute if Section 7212 applied to state depositories? (7) Priorities specifically given by statute on dissolution of insolvent banks: R. S. 1919, secs. 11688, 11691, 11707, 11714, 13345.

BLAIR, C. J.—On January 15, 1924, the Holland Banking Company, a banking corporation organized under the laws of this State and doing business at the city of Springfield, became insolvent. Said bank had previously received four-eightieths of the funds in the custody of the State Treasurer as a depository of the State. Such deposit was secured by collateral and other security. When the bank was closed by the Commissioner of Finance on said day the State had a balance in said bank of $1,035,656.59. Demand for the full amount was made

upon the bank by the State Treasurer. The bank failed to pay the deposit because of its insolvency.

A large portion of the security held by the State consisted of notes secured by first deeds of trust upon Missouri lands and certain personal bonds. A portion of the collateral security, which could be disposed of without too great a sacrifice, was converted into money and applied to the indebtedness due the State. The personal bond or bonds were signed by persons who either failed when the bank was closed or were otherwise insolvent, and such bonds were worthless as security to the State. The remaining securities were of such doubtful value or their conversion into money entailed such a great loss that the State Treasurer was unwilling to sacrifice the same and undertook to establish a priority over the claims of other depositors and general creditors in the assets of the bank which had not been turned over to the State as collateral security for the State's deposit. To that end a claim for the balance of the deposit due to the State was filed with the Commissioner of Finance and same was approved. Proceedings were thereafter instituted by the Commissioner of Finance in the Circuit Court of Greene County to determine the question of the alleged priority of the State's claim over the claim of general creditors. The circuit court denied the State's right to such priority, entered judgment on the pleadings accordingly, and the State has appealed to this court.

No point seems to be made because the State did not, at a great sacrifice, first exhaust all the collateral security in its hands. It necessarily results that if the State is entitled to priority in the general or unpledged assets of the bank over other depositors and general creditors, the collateral security not disposed of by the State and not applied upon the State's deposit will become part of the assets of the bank and available to the other creditors after the State's claim has been paid. The amount of the State's claim due from the bank when the claim of priority was denied by the circuit court was found to be $353,-738.41.

It is the contention of the State, which is appellant here, that its claim is entitled to preference over the general creditors under its common-law right as a sovereign to protect against loss its funds dedicated to the maintenance of the State Government and also that it is entitled to the same priority by virtue of the provisions of Section 7212, Revised Statutes 1919.

On the other hand, the position of respondents is that the common-law priority of the State no longer obtains since the Legislature enacted what is now Section 7212, and that said section has no application where the State has deposited its funds in the banks of the State under the provisions of the State Depository Law, as set forth in Article II of Chapter 123, Revised Statutes 1919. Respondents contend that said article comprises a complete scheme within itself, affords the State full and complete means of protecting its deposits made under the authority of said statute and indicates the purpose of the Legislature not to avail the State of the broad terms of Section 7212, in so far as deposits under the State Depository Law are concerned.

Said Section 7212, except for its proviso, is a rescript of Section 3466, United States Revised Statutes, using the words ''State of Missouri'' where the words ''United States'' appear in the Federal statute. By the proviso referred to our Legislature made certain exceptions, thereby narrowing and limiting the priority to which the State is entitled, and made its claims subject to the priority of claims of the Federal Government and claims of servants for wages and certain debts incurred in the last sickness of deceased debtors. Said Section 7212 reads as follows:

''Whenever any person indebted to the State of Missouri is insolvent, or whenever the estate of any deceased debtor in the hands of the executors or administrators is insufficient to pay all the debts due from the deceased, the debts due to the State of Missouri shall be first satisfied, and the priority hereby established shall extend as well to cases in which a debtor not having sufficient property

to pay all his debts makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed: *Provided,* that nothing in this article contained shall be construed to interfere with the priority of the United States as secured by law, or the payment of the expenses of the last sickness, wages of servants, demands for medicine and medical attendance during the last sickness of the deceased, nor funeral expenses."

There could not be any successful contention that the State is not entitled to priority as to its claim upon all the assets of the bank under Section 7212, unless, as respondents contend, the Depository Act is a separate and complete scheme in itself and the Legislature has thereby relinquished its right to such priority. Section 7212 clearly declares priority in favor of debts due to the State upon all the property of insolvent persons, which necessarily includes banks. The only claims over which the priority of the State does not extend under the statute, as above pointed out, are debts due to the United States and to servants for wages and to those due for the expenses for medicines and other expenses incurred in the last sickness and burial of deceased persons.

The constitutional requirement that state money be deposited in selected depositories with satisfactory security for the repayment thereof is found in Section 15 of Article X of the Constitution of 1875. This section need not be set out since the same matter is covered by the statute. Our depository law is found in Article II, chapter 123, Revised Statutes 1919. It is provided by Section 13375 that all money in the State Treasury shall be deposited by the State Treasurer in such banks as he may from time to time select, with the approval of the Governor and Attorney-General, taking security satisfactory to the Governor and Attorney-General for the safe-keeping and payment of such deposits when demanded by the State Treasurer. Section 13376 provides for dividing

the money of the State into eighty equal parts and solicita-
tion of bids. Section 13377 provides for the payment to
the State by the depository of interest on daily balances.
Section 13378 provides for receiving and opening bids
and selecting depositories.

Section 13379 covers the amount and character of
security to be exacted. That section is the one with which
we are here principally concerned. Respondents have set
out a history of our depository law in an appendix to
their brief. No question of its accuracy is raised and we
will draw from it briefly, so far as it relates to said section.

In 1879 the General Assembly passed the first act to
carry out the provisions of our Constitution. Section 5
of that act, with such changes as have been since made,
is now Section 13379. As first enacted, it provided that
the Governor, Attorney-General and Treasurer should
require of selected and approved banks or banking in-
stitutions, giving security for the safe-keeping and pay-
ment of deposits, bonds of the United States or of the
State of Missouri put up with the Treasurer and kept by
him at least equal in *amount* to the amount of deposits
received by such depository from the State. Additional
deposits of such securities could be required. The other
provisions of the original act need not be recited. The
word "amount" which we have put in italics was sub-
sequently amended to read "value." [Laws 1889, p.
317.]

In 1889 the General Assembly passed "An Act to
revise and amend Chapter 164 of the Revised Statutes of
1879 relating to and entitled 'Of the State Treasury,'"
The former statute included the depository law of 1879.
The 1889 Act was a complete revision and did not amend
any particular section of the 1879 statute. At page 316
(Laws 1889) the provision for security of state deposits
will be found. It was designated as Section 7640. The
old requirement that depositories should put up as se-
curity bonds of the United States or of the State of Mis-
souri was retained. Section 7640 of the 1889 Act gave

the Governor, Attorney-General and Treasurer the right
to accept as security "in their discretion" the registered
funded bonds of any county in this State worth not less
than par. The character of security was further changed
in Laws of 1895, page 276, by including bonds of any
other city in this State having a population of not less
than one hundred thousand. In Laws of 1909, page 882,
the words "one hundred" were changed to "ten," so that
bonds of cities of this State of over ten thousand popula-
tion were made acceptable as such collateral security. At
the same session of the General Assembly and by the
same act, registered school bonds of any school district
in any city, town or village in this State, worth not less
than par, and approved registered bonds of any drainage
or levee district, worth not less than par, and registered
state bonds of any state, worth not less than par, were
made acceptable as collateral security.

In Laws of 1913, at page 770, a most far-reaching
amendment was made which permitted securities of such
character to be taken by the State from the Holland Bank-
ing Company that there afterward resulted a great short-
age between the deposit made in said bank by the State
and the value of the collateral readily convertible into
cash. This amendment made available to depositors as
security, in lieu of the bonds previously mentioned, notes
held by them secured by first deeds of trust on Missouri
real estate, which notes and deeds of trust should not
exceed fifty per cent of the actual value of such real
estate. A note of this character was required to be ac-
companied by an abstract of title and the written opinion
of some reputable lawyer showing the title to the land to
be in the maker of the note. In the event security of that
character was accepted, a personal bond equal to at least
seventy-five per cent of the accepted bid or bids was also
required. Bonds of cities of this State of two thousand
population were made acceptable at the same time.

In Laws of 1915, page 406, provision was made which
allowed depositories forty-five days in which to pay over

their deposits, in the event their contracts were not renewed or their bids were not accepted. In Laws of 1921, page 285, it was provided that this time could be extended to one hundred and eighty days. Other amendments are noted in the appendix of respondents' brief, but they need not be considered here.

From this history of Section 13379, as it now appears in Revised Statutes 1919, it is evident that the securities at first required were those of the highest order, that is, bonds of the United States and of the State of Missouri. They were interest-bearing securities of the very best character and were readily convertible into cash. At first such bonds were required to be equal in amount to the deposit. This was afterwards changed, as we have seen, so as to require them to be equal in value. This change was made at the same time the personal bond of twenty-five per cent of the accepted bid or bids and securities of lower grade were provided for. While the Act of 1879 required securities of the highest order to be put up as collateral, successive amendments, as the years passed, tended to lower the character of the security demanded. This lowering of character of security was offset by a new condition, to-wit, that personal bonds should be given to the State. When bonds of the city of St. Louis and of the several counties, which were also high-grade securities, were made available as security, the bond required amounted to twenty-five per cent of the accepted bid or bids. The same amount of personal bond was still required when the Legislature made available as security the bonds of cities of one hundred thousand population (later reduced to ten thousand population) and bonds of certain school districts, drainage districts and bonds of any State, all worth not less than par. At the same time that notes secured by deeds of trust and bonds of cities in this State having a population of two thousand or more were made available as security, the requirement was added that personal bonds of at least seventy-five per cent of the accepted bid or bids should be exacted of the depository.

Thus it is seen that, as securities of less absolutely certain value were authorized to be accepted as security, additional safeguards through the means of personal bonds were exacted. Although bonds of cities, school districts, drainage and levee districts and of other states, are everywhere regarded as high grade securities, a bond of twenty-five per cent of the accepted bid or bids was required. The Legislature only authorized the acceptance of notes secured by deeds of trust on real estate and bonds of cities of two thousand population when it supposedly made the State's deposit sufficiently safe by exacting personal bonds in addition equal to at least seventy-five per cent of the accepted bid or bids.

The history of the original Act of 1879 (now Section 13379) cannot be studied without reaching the conclusion that it has been the legislative policy of this State so to safeguard the deposits of the State's money by exactions of collateral security and personal bonds of such value and in such amount as amply to protect the State against loss occasioned by failure of depositories to pay its deposits, regardless of the common-law priority attaching to claims due the State and regardless of our statute of 1881, now Section 7212, which is simply declaratory of the common law on the subject. In other words, Article II, Chapter 123, and particularly Section 13379, comprise a complete and supposedly all-sufficient separate scheme for protecting the deposits of the State. It was entirely unnecessary for the Legislature to go to the full extent it did in exacting both bonds and secured notes of value equal to the deposits and personal bonds in addition thereto, if it was its intention to rely upon general priority rights afforded by the common law or the statute of 1881.

Section 13379 bears other evidence on its face that its provisions were intended as a separate scheme and as complete protection for the State's deposits entrusted to its depositories. The first sentence of Section 13379 begins as follows: "For the security of the funds de-

313 Mo. Sup.—21.

posited by the Treasurer under the provisions of Articles I and II of this chapter, the Governer, Attorney-General and Treasurer shall require," etc. Then follows a description of the character and value of the security and personal bonds authorized to be accepted as protection to the State against loss of its deposits.

Said section also provides "in the event such bank or banks or banking institution of deposit shall fail to pay such deposits, or any part thereof, on the check or checks of the State Treasurer, then it shall be the duty of the State Treasurer to forthwith convert such bonds into money," etc. Here, if anywhere, would have been the appropriate place in the section to direct the State Treasurer to assert the State's claim of priority over other creditors, in the event the securities and personal bonds taken proved inadequate, if the Legislature intended that resort should be had to such priority.

There is a wealth of cases cited by appellant showing that the common-law priority of the State for debts due to it has been recognized in most of the states. There seems to be no question about such general recognition. It is unnecessary to discuss the cases. Such cases will be appended to this opinion by our Reporter.

Notwithstanding the existence upon its statute books of the priority law applicable by its terms to every conceivable debt due to the State, the State may waive the benefits of such priority law by enacting other laws which evidence such intent. The case of that sort chiefly relied upon by respondents is Cook County National Bank v. United States, 27 L. Ed. (U. S.) 537. It was there held that the act of Congress authorizing the formation of national banks, which made provision for the deposit of bonds to secure the redemption of circulating notes issued by such banks and for securing the deposits of public money made in such banks, was a complete scheme within itself and that the United States have no right of priority over other depositors and creditors of such banks for the repayment of deposits not protected by security

thus taken. It was so held notwithstanding the exist-
ence of Section 3466 of the Revised Statutes of the United
States, of which our Section 7212 is a rescript. Section
5236 of the Federal statute provides that, after full pro-
vision by the exercise of the Government's priority had
been made for refunding to the United States any de-
ficiency in redeeming the notes of the bank, the Comp-
troller should make a ratable distribution of the remain-
ing assets among the other creditors of such bank whose
claims had been allowed or adjudicated by a court of
competent jurisdiction. In the Cook County National
Bank case this provision was held to be significant of the
intention of Congress that no priority should be given
the claims of the Government, except to the extent of any
deficiency incurred in redeeming the circulating notes of
the bank. But this was only one of the reasons advanced
by the court for holding that the Government was not en-
titled to priority in respect to the claim there involved.

Another and seemingly just as cogent reason given
was that the act comprised a complete and separate
scheme in itself for protecting deposits of the Govern-
ment. Mr. Justice FIELD said:

"In the second place, when the banks are made de-
positaries of public moneys and employed as financial
agents of the Government, it is the duty of the Secretary
of the Treasury to require them to give satisfactory se-
curity, by the deposit of United States bonds or otherwise,
for the safe-keeping and prompt payment of the public
money deposited and for the faithful performance of their
duties as financial agents. The amount of security which
the Secretary may thus require has no limit but his own
judgment as to its necessity. Every officer of a bank
which is not an authorized depositary, and which has not
therefore given the required security, who knowingly re-
ceives any public money on deposit, is liable for em-
bezzlement. [R. S. sec. 5497.] The Government can thus
always have security, limited in amount only by the
judgment of the Secretary of the Treasury, for public mon-
eys deposited with any national bank.

"With these provisions for security against possible loss for moneys deposited, it would seem only equitable that the Government should call for such security and, if it prove insufficient, take the position of other creditors in the distribution of the assets of the bank in case of its failure."

Section 13379 of our statute does not leave either the value or the character of the security for the State's deposits to the discretion of the Treasurer and the other state officers. It fixes a minimum of security which must be exacted. The bonds and notes taken as such security must be of a value at least equal to the deposit, with the additional requirement of personal bond of twenty-five per cent of the bid accepted, where certain bonds are put up, and personal bond of seventy-five per cent of such accepted bid when notes secured by real estate are put up as security. If such minimum requirements are faithfully observed and solvent personal bonds taken, no loss can accrue to the State on account of such deposit.

The rule that the State will be deemed to have waived its general common-law or statutory priority where it exacts security for its deposits was declared by the Supreme Court of Utah in National Surety Company v. Pixton, 208 Pac. 878. It was there said:

"Under the banking laws of this State, the State, by its acts and conduct, has clearly indicated that it claims no preferential rights over other depositors. While the law authorizes the State Treasurer to deposit the funds of the State in certain banks, it also compelled him to require the bank to secure the repayment of the funds so deposited. If the State were relying upon its preferential right, its funds would be amply secured without requiring any security of that nature. . . . True, the rights of the sovereign State are not deemed lost or waived unless the waiver is in express terms, yet we cannot see, in so far as the deposit of public funds is concerned, in view of the laws of this State, and especially in view of the State's conduct in the matter before us, how it can

be held otherwise than that the State did not intend to
assert its preferential rights in those matters, regardless
of what its rights in that regard may be, by authoriz-
ing the making of a deposit of public funds.''

The case of In re Central Bank, State v. Lowder-
milk, 205 Pac. (Ariz.) 915, is to the same effect. From
the opinion in that case it is not altogether clear that the
common-law priority of the State was recognized. But
the result reached apparently would have been the same
regardless of such recognition. It seems that the se-
curity taken where the State's money is deposited must
be resorted to when there develops a deficiency after a
distribution of the general assets of the bank. In this
State, however, the security is resorted to as soon as the
bank fails to pay the checks of the State. This difference
does not appear to affect the persuasive value of the
Arizona case. It was there said:

"Title 44, Civil Code 1913, paragraphs 4642-4653,
inclusive, contains the provisions of the law prescribing
the duties of fiscal officers with reference to the keeping,
lending and paying out of public moneys of the State
and counties. In the case of state moneys, the duty of
selecting depositaries is placed upon the Governor, the
Treasurer, and the Auditor. The depositaries may be
state or national banks and must have a paid-up capital
stock of not less than $10,000. The depositary must
qualify by giving its bond to the State signed by a surety
company or by individuals possessing the qualifications
required by law in case of official bonds, or it may deposit
with the State Treasurer in lieu thereof interest-bearing
bonds of the United States, the State, county, city, road
or school districts of the State. If the designated deposi-
tary tenders to the State its bond with sureties, it is
made the duty of the Governor, Treasurer and Auditor of
the State to 'certify in writing thereon that they have
made diligent personal investigation as to the sufficiency
of the sureties thereon, and are satisfied that such bond is
amply sufficient to protect the interests of the State' (Sec-

tion 4645), and at the time approve the bond. It is provided that 'it should be the duty of the State Treasurer, upon the receipt of such bond, . . . to forthwith deposit with the bank or banks, executing the same, the public moneys then in his possession. . . .' [Section 4647.]

"The depositaries are active or inactive according to designation by the Governor, the Treasurer, and the Auditor. The difference between these depositaries is that the active one's account shall at all times be subject to draft for the purpose of meeting current expenses of the State and shall pay interest on the daily balances at not less than two per cent; whereas, the inactive depositary shall not be subject to daily draft and shall pay interest at a higher rate fixed by the statute. It will be seen that the Legislature has devised a plan or scheme quite comprehensive and complete by which the public moneys of the State may be loaned at interest, and has with care and propriety conferred upon three of its highest administrative officers the power and duty to select and qualify state and national banks as such depositaries. The Treasurer is forbidden to deposit with any depositary any excess over the amount of the bond or security furnished. . . .

"Bearing in mind that the object of such preference is to secure the State in its revenues, if the Legislature has adopted other means to attain the purpose, then the reason for applying the common-law rule of the sovereign prerogative, as has been done in some jurisdictions, does not exist in Arizona, even though the common law is by statutory adoption a part of the laws of the State when not inconsistent with the Constitution of the United States or the Constitution or laws of the State or established customs of the people of the State. [Paragraph 5555, Civil Code.] We think the plan for lending and safeguarding the public moneys of the State and counties provided for in Title 44, Civil Code, supra, in allowing the State to exact security from the depository, whereas no other depositor or patron of the bank is given such

privilege, must have been intended as a substitute for the common-law prerogative.''

Respondents cite Potter v. Fidelity & Deposit Co., 101 Miss. 823. The case is of little value here because it was held that the priority accorded the sovereign by the common law did not obtain in Mississippi, and also that the priority afforded by a statute relied upon did not apply to state deposits made under depository laws of the State. However, we quote a portion of the opinion because its reasoning appears to be applicable to deposits made under depository laws similar to our own. It was said: ''But when the State itself disposes of its public funds as is required by the depository laws, the relation of debtor and creditor is established between the State and the depository merely, and the State must make its money, in the event of the insolvency of the depository, out of its securities, and, failing in this, it must take its place in the line of general creditors and share the assets *pro rata* with such creditors.''

Leach v. Exchange State Bank, 203 N. W. (Iowa) 31, is cited by respondents. There priority was denied in respect to funds belonging to a school district on deposit in a bank. Such denial was based principally upon the statute regulating distribution of assets of insolvent banks which gave in terms a preference to all depositors alike and made no provision for priority as to deposits of the State or its municipal subdivisions. It was held that such provision modified the general statute giving preference to debts due the State. However, the Iowa Supreme Court also recognized the persuasive, if not controlling, reason that when a State enacts a depository law which is a complete scheme in itself for the protection of the state deposits and provides for the taking of security for such deposits, the State will be held not to have intended to avail itself of the general priority in respect to debts afforded by the common law or a statute upon that subject. It was said:

''Still another consideration, and one entitled to weight, not only upon the question of public policy in-

volved, but upon the legislative intent in re-enacting, with Section 3825a upon the statutes books, the provision of a prior statute for the ratable distribution of the assets of an insolvent state bank, with preference to depositors, is the fact that the statutes make ample provision for the security of public funds on deposit in banks, by requiring depository bonds, and that, in the case of a failure to comply with these requirements, under established principles of equity, the deposit would be wrongful, and, if traceable as augmenting the bank's assets, would be recoverable as a trust fund. The proper protection of public funds, recognized as a salutary purpose to be accomplished, is not jeopardized by a holding that the statute in question provides for a ratable distributing of the assets of an insolvent state bank, with preference to depositors.''

The case of Cook County National Bank v. United States, supra, as we have seen, was ruled against the Government's claim of priority in part on the ground that the law creating national banks and providing for their dissolution only provided for a preference in favor of the Government for any deficiency between the amount of circulating notes and the bonds deposited to secure their redemption, and further provided for ratable distribution of the remaining assets after such deficiency was cared for. Our statute regulating the manner of winding up the affairs of insolvent state banks presents provisions quite like those deemed controlling in the Cook County National Bank case. Certain priorities are specifically given upon the dissolution of insolvent banks, and priority for unpaid state deposits is not there provided for. [Secs. 11688, 11691 and 11714.]

Section 13345, Revised Statutes 1919, is as follows:

''The amount of every account audited, adjusted and found due to the State, according to the provisions of Articles I and II of this chapter, with the penalties and interest thereon, is declared to be a lien upon the real estate of the person charged with the same, from the time that suit shall be commenced for the recovery thereof.''

By reference to Article II of Chapter 123, which includes our depository law, unpaid deposits due the State would seem to be included. The creation of a lien in favor of the State for such accounts would not have been deemed necessary if the Legislature intended that the broad priority provisions of Section 7212 should apply to claims for unpaid state deposits.

Under the reasoning of the Cook County National Bank case the fair inference to be drawn from such specific priority and lien provisions is that the Legislature intended that no priorities in favor of the State, other than those specifically provided for, should be allowed out of the assets of insolvent state banks.

We have carefully examined all of the cases cited and relied upon by appellant. Except as later noted, they are either so dissimilar in their essential facts as to be clearly distinguishable or are cases in which priority was permitted under the common law or the priority statutes where there was on the statute books no depository law constituting a complete, separate and efficient scheme for securing the State against loss of its deposits, such as we have in Missouri. The cases cited by appellant will be appended to this opinion by our Reporter. We will only consider a few of them.

One of the cases which may be deemed in point is Booth v. State, 131 Ga. 750, 63 S. E. 502. There priority as to the State's deposits was recognized. A bond for one hundred thousand dollars had been given as security for the deposit. The judgment of the trial court allowing priority to the debt due the State was reversed because prematurely entered. However, the Supreme Court deemed it necessary to consider the question of the State's priority and held that the State did have priority, notwithstanding the fact that the statute required the giving of a bond by the depository and forbade the making of deposits in a bank in excess of such bond. The reason given for such ruling was that there was nothing in the law authorizing the making of such deposit which justi-

fied the inference that it was the purpose of the Legislature to abrogate or change the law giving the State a priority as to debts due it over the debts due to individual creditors and depositors of an insolvent bank. There were no securities taken by the State in addition to the bond. There was no presentation to or consideration by the court of the question here urged that where the depository law comprises a separate, complete and adequate scheme for the protection of the State's deposits, the legislative intent to waive other statutory or common-law provisions for priority will be inferred. If the Booth case can be regarded as authority to the contrary, it appears to be out of harmony with other cases we have considered and seems to ignore the equitable considerations which influenced decisions holding otherwise.

In American Surety v. Pearson 178 N. W. (Minn.) 817, the State was held entitled to priority as to its deposit in an insolvent bank, notwithstanding a bond had been taken as security and regardless of the fact that a section of the statute providing for priority had been dropped out in a subsequent revision of the State's depository law. However, two other statutory provisions were held to have preserved the State's priority rights. For that reason the case may readily be distinguished.

A Montana case cited by appellant seems more nearly to approach the question before us than any of the other cases cited. It is Fidelity & Deposit Company v. McClintock, 218 Pac. 652, 68 Mont. 342. There was no statute giving the State such priority, but the common law on the subject was held to be in force in that State. The case of Aetna Accident & Liability Co. v. Miller, 54 Mont. 377, upon which the Fidelity & Deposit case was ruled, does not discuss the effect upon the priority of the State of exaction of adequate security for its deposits under a depository law. The Fidelity & Deposit case goes further and holds that the enactment of a depository statute requiring security for such deposits does not expressly waive the State's preference and is not incon-

sistent with the common-law priority as to debts due the State. It was said: "Since this State, in virtue of its sovereignty, has the preference right conferred by the common law, and could lose it only by the declaration of the lawmaking power, and since we fail to find any statutes from which a legislative purpose to waive the right can be deduced, we adhere to our former decision, and hold that the right still exists in all its force and vigor."

The requirement of an express waiver was not held to be necessary in the cases we have cited supporting the rule that no priority will be accorded the State's debt where the state depository law has provided for complete and adequate security for the State's deposits. The Montana case seemingly stands alone in this respect.

We are satisfied that the decided trend of the better-reasoned cases is to the effect that where a State has a general statute giving priority to the debts due the State, or where the common law to the same effect is recognized and where such state also has a depository law directing the deposit of the state's funds in selected depositories which are required to give full and adequate security equal to or in excess of such deposits as may lawfully be made therein, and where no preference over and above the protection of such security is specifically provided for in such depository law, the State will be deemed to have waived its priority rights under the general priority statute or the common law as the case may be, and will be required to look to the security taken by it for the repayment of such deposits and can only come in on a parity with general creditors for a distributive share of the unpledged assets of the insolvent depository after it has exhausted the security taken by it and applied same upon its debt.

This is especially true where the statutes of such State, regulating the course of procedure for winding up the affairs of an insolvent state bank, make specific provision for priority in certain instances and make no provision for priority as to debts due the State on account of

unpaid deposits. Where depository laws of the charac-
ter described are in existence and the State reserves full
powers of visitation of such banks and can make unlim-
ited inquiry into its affairs, the State is in a position to
protect its deposits fully, and loss can only be incurred
where there is a failure to take advantage of such powers.
To hold that the State, under such circumstances, has the
right to assert priority in the unpledged assets of such a
bank is inequitable and tends to make state depositories
undesirable as depositories for the ordinary depositor.

But appellant contends that the enactment in 1881 of
what is now Section 7212, after the passage in 1879 of the
depository law, evidences the legislative intent to give
to state deposits the additional security afforded by the
later enacted priority statute. Whatever may be said con-
cerning the controlling effect of Section 7212 when first
enacted is now inapplicable, because of the fact that in
1889 what purported to be a new, complete and independ-
ent act covering the subject of the treasury department
of the State was enacted. [Laws 1889, p. 297 et seq.]
In said act such parts of the 1879 law as were desired
were copied, but there was no amendment in terms of any
portion of the 1879 statute. It was a new act and later
than the Act of 1881, now Section 7212. Section
7640 of the 1889 Act covered the subject of the
security required for safe-keeping the state deposits.
Said Section 7640, with subsequent amendments thereto,
is now Section 13379, Revised Statutes 1919. Said sec-
tion is a later expression of the legislative will than is
Section 7212. Appellants' contention in this respect is
not well founded.

National banks may become depositories under our
statute. Even if the State could properly assert priority
as to its deposits in an insolvent state bank, it could not
successfully claim such priority in the assets of an insol-
vent national bank. This would result in discrimination
against state banks to the advantage of national banks.

Such priority as to the assets of state banks and want of such priority rights in the assets of national banks would tend to make the latter more desirable depositories for the great body of depositors who can in no event assert priority rights.

The power of the State to create a priority in the assets of national banks, not recognized in the United States Revised Statutes, Section 5236, was expressly denied by the United States Supreme Court in Davis v. Elmira Savings Bank, 40 L. Ed. 700. There the New York statute provided that certain deposits in other banks made by savings banks should have priority over debts due from insolvent banks to other depositors and general creditors. The Court of Appeals of New York sustained such priority when asserted in respect to the assets of an insolvent national bank. The United States Supreme Court reversed the judgment of the New York Court of Appeals and directed the disallowance of such asserted priority claim. It is apparent that the Davis case constitutes an authoritative precedent denying the power of the State to establish priority as to its own deposits in insolvent national banks. It is contrary to the policy of this State to permit discrimination against state banks in favor of national banks. The only way to prevent such discrimination, in so far as encouraging the use of state banks as depositories by the general public is concerned, is to deny priority to the State as to deposits in state banks.

In view of the foregoing considerations, it is manifest that the trial court was correct in denying the State's claim of priority under Section 7212, Revised Statutes 1919, and that the judgment of such court should be affirmed. It is so ordered. All concur, except *Otto, J.,* not sitting.